THE STATE *against* MARTIN R. P. MATHIS.

ERROR *to the Circuit Court of Chicot County.*

If *one* only of several counts in an indictment is good, and sustained by evidence, judgment thereon may be legally given.

Upon quashing an indictment, the recognizance becomes ineffectual, and the finding of another indictment in time is rendered very doubtful.

Consequently, courts of justice will regard, with great strictness, any application to quash an indictment, more especially, when it comes from the defendant.

Though the indictment contain several defective counts, if there be *one* which is good, a motion to quash will be overruled.

A person who knowingly permits any kind of gaming, whatsoever, in any house, out-honse, or other building of which he is the owner or occupant, may, under the 4th section of the statute against gaming, be indicted and punished.

An indictment was preferred against Mathis, in the court below, containing four counts; the first charging the defendant, Martin R. P. Mathis, with knowingly and wilfully permitting certain persons to frequent the house kept by the said defendant, and knowingly permitting them to exhibit a certain unlawful gaming table, commonly called faro table, at which persons were betting, winning and losing, &c.

The second count charges the defendant with keeping a common gaming house, and there permitting persons to frequent and come and play at certain games of cards, called bluff, brag, pocre, seven up, &c., for large sums of money.

The third charges the defendant with permitting certain persons to frequent the house, kept by him, and then and there playing at and on a certain unlawful gaming table, called faro bank, the red tiger, and permitting said persons to play together at brag, bluff, seven up, &c., for lage sums of money.

And the fourth count charges the defendant, in the language of the statute, with keeping a common gaming house, and in the said house permitting certain persons to exhibit and keep a certain unlawful gaming table, commonly called faro table, &c.

At the November term of the Circuit Court the defendant filed his motion to quash the indictment upon the ground of uncertainty,

and because one count being defective, the whole indictment must be quashed; which motion was sustained; and the State sued her writ of error.

CLENDENIN, *Attorney General*, for the State:

By the fourth section of the law, under the title of " gming," every person who shall suffer and permit certain gaming tables, or games specified in the first section, to be carried on or exhibited in his house, shall be punished as therein prescribed. *Rev. Stat.* 273, *sec.* 1 *and* 4. The first and fourth counts of this indictment charge, separately, that the gaming tables and games, mentioned in the first section, were carried on and exhibited in the house of the defendant; upon these two counts the defendant might have been convicted—granting that the second and third counts are defective—for if one count in an indictment be good, although the others may be defective, it will be sufficient to support a general verdict of guilty. *People vs.* *Curtray*, 1 *J. R.* 320. Indictments for misdemeanors may contain several counts for different offences, provided the judgment upon each be the same; see *Arch. Crim. Pl. p.* 61, *and authorities;* from these authorities, it is argued that the first and fourth counts, being good, the judgment of the court sustaining the motion to quash, was erroneous.

PIKE, *Contra:*

We take it to be a settled principle, that on a motion to quash an indictment, if there be one bad count, the whole must be quashed. Chitty lays the law down to be, that where " a defect is shown which induces the court thus to interfere, they must quash the whole indictment; for they cannot strike out some counts, and leave others to be determined on the trial." 1 *Ch. Cr. Law*, 303.

The second count charges the defendant with keeping a common gaming house, and permitting persons there to play at the games of brag, bluff, pocre, seven-up and three-up, and it is conceived by the defendant that this count charges no offence punishable under the statute. *Sec.* 1 of *Art.* III, of the chapter on Criminal Jurisprudence, *Rev. Stat.* 273, provides the punishment for keepers or exhibitors of

gaming tables, gambling devices and banking games, **A. B. C., E. O.,** faro &c., for which the punishment is fine not less than one hundred dollars, and imprisonment not less than thirty days.   Sec. 2 provides the punishment of persons interested or. concerned in the gambling prohibited by sec. 1; which punishment is the same as provided in the first section.   Sec. 3 provides the punishment for betting on the same games; and sec. 4 provides that if any owner or occupant of any house, &c., shall knowingly permit or " suffer any of the before mentioned games, tables or banks, or shall suffer any kind of gaming under any name whatsoever, to be carried on, &c., he shall be fined as provided in section 1.

Every section, in an act of this kind, must be construed and interpreted in reference to the context.   The first seven sections of this article are occupied in providing against a certain species of gaming, and a certain description of games, mentioned in the first section. The general words used in the first section, " *or any other* gaming table, or gambling device, or bank, of the like or similar kind, or of any description, although not herein named, be the name or denomination what it may, adapted, devised or designed for the purpose of playing *any* game of chance, &c." although very broad, manifestly include and refer to a particular species of gaming, *to wit*: banks, or devices where one plays against many: and do not, of course, include the games named in the eighth section, of " brag, bluff, pocre, seven up, &c., *or any other* game at cards," the punishment of which is merely a slight fine.   Two kinds of games are thus designated—one the games resembling faro, rouge et noir, &c.; and the other the small games which several persons play at once, but which are not banking games.

That sec. 4 refers only to such games as are named, *or included in* the general description in sec. 1, is manifest, we think, from the magnitude of the punishment imposed, it being the same as is provided against the keepers and exhibitors of such banks, games and devices; and the general words in sec. 4, can only, we think, be considered co-extensive with the general words used in sec. 1.   If such is not the case, while the persons who play at whist, are only punished by a slight fine, he in whose house the game is played, is mulcted in a

heavy fine, and imprisoned at least one month. Construed by the context, and so restraining the general words, the punishment is uniform, and not unreasonable. There is nothing in this construction which is contrary to legal rules, and therefore it should be adopted.

The third count is liable to the same objection, and upon these grounds we submit that the decision of the court below; quashing the indictment was correct.

DICKINSON, *Judge,* delivered the opinion of the court:

The defendant insists that, if one count is bad, the objection is good to the residue. We are by no means prepared to admit the correctness of this position; for it is clear, to our minds, that if one count in the indictment be good, although the other may be defective, it will be sufficient to support a general verdict of guilty. 1 *J. R.* 320. *Archbold's Cr. Pl.* 61, says that, indictments for misdemeanors may contain several counts for different offences, provided the judgment for each be the same.

The power of the court to quash indictments, is discretionary. They may do it immediately, or oblige the defendant to plead or demur as they may think best. In the exercise of this discretion, they are guided by certain rules; and when the motion comes from the defendant, they are more strict than if the application is made by the prosecution; because, if the indictment is quashed, the recognizance is ineffectual; and it might be doubtful about a good indictment being found in time. This rule is more strictly applicable to the higher offences when the ground is clear and plain, but it is presented in full force on an indictment when there are several counts, some of which are good, and upon which judgment could be given on a general verdict. It is frequently advisable, when the evidence will not support the whole charge, to insert several counts, for the prisoner may be found guilty of a part, and acquitted of the residue. If this be so, and we presume it will not be controverted, it follows, that if one count is good, and is sustained by evidence, judgment can be legally given upon it. Nor can a grand jury separate the parts of an indictment, but must either find a true bill or throw out the whole.

In 1 *Chit. Crim. Law,* 167, 8 *and* 9, and in authorities there cited,

it is expressly laid down, "that a defect in some of the counts of an indictment will not affect the validity of the remainder, for judgment may be given against the defendant for those which are valid." In civil actions, the rule is different, because, if one part of the declaration is ill, and the jury find entire damages, the judgment must be arrested; and the reason of this distinction is, that in the latter case the jury find entire damages, and the court cannot apportion them, whereas, in the former, the court themselves regulate the severity of the sentence, and can do so according to their discretion upon those parts of the indictment that are supported. 1 *Salk.* 386.

We consider the question as regards the right of the court to try the defendant in case there is one good count, as well settled. Each separate count should charge the defendant, as if he had committed a distinct offence, because, it is upon the principle of the joinder of offences that the joinder of counts is admitted.

We will now proceed to test the correctness of the decision of the court below, by the rules here laid down. The first section of the law prohibiting gaming; *Rev. Stat.* 273, declares that "every person who shall set up, keep, or exhibit any gaming table or gambling device, commonly called A. B. C., E. O., roulette, rouge et noir, or any faro bank, or any other gambling table or gambling device, or bank of the like or similar kind, or of any other description, although not herein named, be the name or denomination what it may, adapted, devised or designed for the purpose of playing any game of chance, or at which any money or property may be won or lost, shall be deemed guilty of a misdemeanor;" and the 4th section of the same act declares, that if any owner or occupant of any house, out-house, or other building, or any steamboat or other vessel, shall, knowingly, permit or suffer any of the before mentioned games, tables or banks, or shall suffer any kind of gaming, under any name whatsoever, to be carried on or exhibited in their houses, or out-houses, or other buildings, or on board of any steamboat, flatboat, keelboat, or other vessel, on any of the waters within this State, on conviction thereof, every such owner or occupant shall be punished, as is provided in the first section of this title." It is under these sections, as necessarily connected, that the first count is found. We have given the

subject the most mature deliberation, and come to what we think the only correct conclusion; that this count is sufficiently express in its language, and certain as to the character of the offence. He is charged with " permitting and suffering divers evil-disposed persons to exhibit, carry on, and play upon a certain unlawful gaming table called a faro bank, in his grocery store." And that such grocery store was kept in some such building or boat, mentioned in the statute, there can be no doubt, and is, in our opinion, sufficiently explicit. Nor can we see any serious objection to the other counts, certainly none sufficient to authorize the court to quash the indictment. Upon the whole, it is clear that the several offences, as charged, are within the letter and spirit of the statute.

The language used in the act against gaming, although not possessing great legal accuracy and precision, is nevertheless sufficiently explicit and comprehensive to include every species of gaming, be the name or denomination what it may, if adapted, devised or designed for the purpose of playing any game of chance at cards, or at which any money or property may be won or lost, and it is upon the rigid and faithful enforcement of the law, that much of the peace and good order of civil society depends.

The due and faithful administration of public justice by all the officers who are charged with this duty, would prevent much of the demoralizing influence that springs from this illegal and pernicious practice. That the Circuit Court of Chicot erred in quashing the indictment, we have no doubt. The indictment contains all the essential requisites that are necessary to charge the defendant.

The judgment of the Circuit Court must, therefore, be reversed.